IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RICHARD EUGENE CALDERWOOD,

    Plaintiff, pro se,

vs.                                            No. CIV 99-00330 JC/KBM

GENERAL MILLS,
HOLLAND BROWN, and
KEVIN ROBIDEAU,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER came on for consideration of Defendants General Mills and Kevin Robideau's Motion for Summary Judgment ("Motion") filed June 19, 2000 *(Doc. 37)*. Since Mr. Calderwood ("Plaintiff") has never served Defendant Holland Brown, the Motion under consideration only deals with General Mills and Kevin Robideau (collectively, "Defendants"). The Court has reviewed the motions, memoranda, and exhibits submitted by the parties and the relevant authorities.[1] The Court finds that the Motion is well taken and will be granted.

**I.    Background**

The General Mills plant in Albuquerque, New Mexico, placed advertisements in the *Albuquerque Journal* on May 10 and May 17, 1998, seeking to hire approximately 20 individuals for

---

[1] Pro se pleadings are held to less stringent standards than formal pleadings drafted by lawyers. Nevertheless, pro se litigants must "follow the same rules of procedure that govern other litigants." *Ashley v. Harris,* 73 F.3d 373 (10th Cir. 1996) (citations omitted). Defendants raise a number of procedural violations by the Plaintiff, including an untimely brief, exceeding page limits, and a surreply submitted without a leave of the Court. Sufficient evidence exists for the Court to strike the Plaintiff's pleadings. This time, the Court will proceed to address all of the substantive arguments presented by the parties. Plaintiff, though pro se, is directed that all further pleadings must comply with the local rules or be subject to denial.

the position of Cereal Manufacturing Technician.  *See* Motion, p. 1, ¶ 1.  General Mills also held informational sessions regarding the open positions at the New Mexico Department of Labor.  *See id.* at p. 2, ¶ 3.

On May 18, 1998, Defendants Kevin Robideau and Holland Brown (both employees of General Mills) presented information regarding the Cereal Manufacturing Technician positions to interested individuals at the New Mexico Department of Labor.  *See id.*  They encouraged the group to submit preliminary applications and indicated they would mail a response by the end of the week.  Plaintiff Richard Calderwood attended the informational session and submitted a preliminary application along with 1,098 other applicants.  *See* Defendant's Exhibit C and Plaintiff's Exhibit T.  During the week of May 20, 1998, General Mills also received 91 employee referral candidates, all of whom were invited to participate in the selections process.  *See* Plaintiff's Exhibit T.

Mr. Robideau and Ms. Brown gathered all of the preliminary applications and brought them to the General Mills Albuquerque office.  A General Mills committee of subject matter experts (i.e., Engineers, Managers, and Technicians) was established to review the applications and assess each applicant's skill level.  General Mills contends that the committee screened all applications against the same criteria using a grading sheet.  *See* Motion, p. 3, ¶ 8; *see also* Plaintiff's Exhibit T.

Out of the 1,098 initial applicants, approximately 224 were evaluated as not having any of the requisite skills or experience, thereby eliminating them from the selections process.  Mr. Calderwood's application was evaluated as containing mechanical skills, so his application was placed in the "mechanical skills" category for further review.  *See* Defendant's Exhibit A, ¶ 12.  Upon review of his preliminary application, the committee eliminated Mr. Calderwood from further consideration.  *See id.*  Once the initial screening was completed, all remaining applicants were invited to participate

in the testing portion of the selections process. *See* Plaintiff's Rebuttal of Defendant's Motion for Summary Judgment, Statement of Facts, ¶ 3 *(Doc. 39)*. In addition, all of the employee referral candidates were automatically invited to participate in the testing phase of the selections process. *See* Defendant's Exhibit A, ¶ 7.

Mr. Calderwood received a letter dated May 22, 1998, that stated General Mills was unable to offer him an employment opportunity. *See* Plaintiff's Exhibit A. Believing that a mistake occurred in the consideration of his application, Mr. Calderwood returned to the Department of Labor on May 25 to talk to the employee from the department who helped organize the recruitment efforts of General Mills. The employee was unable to help Mr. Calderwood. The following day, Mr. Calderwood visited the General Mills plant in hopes of getting his application reconsidered by Defendant Brown; however, he was unsuccessful.

On May 27, 1998, Mr. Calderwood called the State of New Mexico Human Rights Division to get assistance because he felt that he was discriminated against based on his age. An employee advised him to go to the testing site and count the number of people he believed to be over 40 years old. Based on a visual inspection, Mr. Calderwood counted 28 people he believed to be over 40 years old. The New Mexico Human Rights Division then investigated Mr. Calderwood's allegations, and it issued a determination of "no probable cause" on February 23, 1999. *See* Plaintiff's Rebuttal of General Mills and Kevin Robideau's Motion for Summary Judgment, Statement of Facts, ¶ 10.

General Mills eventually hired 20 individuals out of the original 1,098 applicants. *See* Defendant's Exhibit A, ¶ 15. The ages of these individuals allegedly ranged from 22 to 50 years old. *See id.*

3

**II.     Standard for Summary Judgment**

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (citations omitted). Under FED. R. CIV. P. 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable to the non-moving party, determines that there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law. *See Thrasher v. B & B Chem. Co.*, 2 F.3d 995, 996 (10th Cir. 1993). The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once the movant meets this burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id*. at 324. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

**III.     Analysis**

Mr. Calderwood alleges that he was discriminated against because of his age (50 years) in violation of the Age Discrimination in Employment Act (ADEA) and the New Mexico Human Rights Act. The ADEA makes it "unlawful for an employer...to fail or refuse to hire...any individual...because of such individual's age." 29 U.S.C. § 623(a)(1). In order to be a member of the class protected under the ADEA, a person must be at least 40 years of age. *See Id.* Similarly, the New Mexico Human Rights Act prohibits discrimination on the basis of age, and 40 years of age also marks the minimum age of the protected class. *See* NMSA 1978, § 28-1-7(A) (2000); *see also*

*Cates v. Regents of the New Mexico Inst. of Mining & Tech.*, 1998-NMSC-002 at ¶ 18, 124 N.M. 633, 638, 954 P.2d 65, 70 (1998).

Where, as here, there is no direct evidence of discrimination, courts use the "three-stage analysis outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-56 (1981), to prove discrimination...." *Cone v. Longmont United Hospital Association*, 14 F.3d 526, 529 (10th Cir. 1994). Likewise, the New Mexico Supreme Court uses "the evidentiary methodology developed in *McDonnell-Douglas*...to provide guidance in interpreting the New Mexico Human Rights Act." *Cates*, 1998-NMSC-002 at ¶ 15, 124 N.M. at 637, 954 P.2d at 69.[2]

In order to prove a case of age discrimination under the *McDonnell-Douglas* methodology, a plaintiff bears the initial burden of establishing a prima facie case of age discrimination. *See Fallis v. Kerr-McGee Corp.*, 944 F.2d 743, 744 (10th Cir. 1991). If the plaintiff establishes its prima facie case, the burden then shifts to the defendant to provide a "facially nondiscriminatory reason for the challenged employment action." *Shorter v. ICG Holdings, Inc.*, 188 F.3d 1204, 1208 (10th Cir. 1999). If the defendant offers a nondiscriminatory reason for the action, the burden shifts back to the plaintiff to show that a genuine issue of material fact exists as to whether the defendant's proffered reason is a pretext for age discrimination. *See id.*

### A.     The Prima Facie Case

"To establish a prima facie case of disparate treatment as a result of the prospective employer's failure to hire, a plaintiff must show that (1) he applied for an available position; (2) he

---

[2]Although the use of the McDonnell Douglas methodology should not be interpreted as an indication that New Mexico has adopted federal laws when dealing with the New Mexico Human Rights Act, one can use federal cases to the extent that they are instructive. *See Cates*, 1998-NMSC-002 at n.2, 124 N.M. at 638 n. 2, 954 P.2d at 70 n.2.

was qualified for the position; and (3) he 'was rejected under circumstances which give rise to an inference of unlawful discrimination.'" *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1278 (10th Cir. 1999) (quoting *Burdine,* 450 U.S. at 252-53).

The undisputed facts show that Mr. Calderwood was over 40 years old and a member of the protected class when he applied for a position as Cereal Manufacturing Technician. However, the parties dispute whether Mr. Calderwood was qualified for the position. Mr. Calderwood relies on his resume as evidence of his qualifications. In contrast, the Defendants argue that the only document used to assess Mr. Calderwood's qualifications was his preliminary application, and this document provided insufficient information that was not reflected in his resume. Furthermore, both parties dispute whether Mr. Calderwood was rejected under circumstances which give rise to an inference of unlawful discrimination. For instance, Mr. Calderwood claims that only 28 individuals over 40 years old were allowed to test for the next phase of the selections process, while the Defendants argue that the employees who were hired for the position ranged in age from 22 to 50 years.

Viewing the record in the light most favorable to the non-moving party, the Court will assume for the purposes of this opinion that Mr. Calderwood has satisfied the minimal requirements of a prima facie case for age discrimination. Accordingly, the burden now shifts to the Defendants to articulate a legitimate nondiscriminatory reason for not hiring Mr. Calderwood.

### B.     The Employer's Legitimate Nondiscriminatory Reasons

A defendant's burden to articulate a nondiscriminatory reason for an adverse employment action has been described as an "exceedingly light" one. *Diagnostek*, 164 F.3d at 1279. In order to meet this burden, a defendant "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by a

discriminatory animus," and this determination "involves no credibility assessment." *Id.* (internal citations omitted).

Based upon the information available to the screening committee, the Defendants contend that Mr. Calderwood was not as qualified for the Cereal Manufacturing Technician position as other candidates. In his application, Mr. Calderwood provided limited information regarding his skills and experience. *See* Defendant's Exhibit C. When compared to his resume, Mr. Calderwood is probably correct in his belief that he has more skills than what was revealed to the screening committee. *See* Plaintiff's Exhibit 50. However, Mr. Calderwood filled out the application, and he chose to provide limited information to represent his abilities. After reviewing Mr. Calderwood's application, the Court notes that Mr. Calderwood had ample space to include a full description of his skills and experience. Instead, he left a number of lines for information blank. *See id.*

Moreover, the Defendants maintain that even if they did misjudge Mr. Calderwood's qualifications, the screening committee had no information regarding an applicant's age. The Defendants further maintain that any alleged inconsistencies in the hiring process were justified because they relied on business judgments outside the scope of any statutory prohibition. Finally, the Defendants maintain that they did not discriminate based on age because out of the 1,098 applicants, 20 individuals were hired and their ages ranged from 22 to 50. Thus, the Court finds that the Defendants have articulated nondiscriminatory reasons for their decision not to hire Mr. Calderwood.

**C.     Pretext**

If the defendant comes forward with a nondiscriminatory reason for its failure to hire the applicant, the burden then reverts to the plaintiff "to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual...." *Romig*

7

*v. City of Iola*, 34 F. Supp 2d 1265, 1272 (D. Kan. 1998) (internal citations omitted).  If the plaintiff fails to offer such evidence, the motion for summary judgment must be granted.  *See id.*

In order to establish pretext, a plaintiff must show either that "a discriminatory reason more [than] likely motivated the employer or...that the employer's proffered explanation is unworthy of credence."  *Burdine*, 450 U.S. at 256.  A plaintiff may accomplish this task by presenting "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence."  *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (citations omitted).  However, "mere conjecture that [an] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment."  *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988).

Mr. Calderwood bases his pretext argument on the following evidence:  (1) he was more qualified than other job applicants; (2) older applicants were not given the proper credit for their job experience; (3) General Mills refused to reconsider his application; (4) employee referral applicants did not have to go through the initial application process; and (5) based on a visual inspection by Mr. Calderwood, 28 people over 40 years old were allowed to test after the initial application process.

### 1. The Qualifications of Applicants

A plaintiff's own opinion about his qualifications or the merit of others does not give rise to a material fact dispute.  *See Burlington v. United Air Lines, Inc.*,186 F.3d 1301, 1318 (10th Cir. 1999).  It does not matter if the employer's proffered reasons were wise, fair, or correct.  *See Id.*  The relevant inquiry is whether General Mills "honestly believed those reasons and acted in good faith upon those beliefs."  *Sanchez v. Philip Morris Inc.*, 992 F.2d 244, 247 (10th Cir. 1993); *see also*

*Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 677 (7th Cir. 1997) ("[A]rguing about the accuracy of the employer's assessment [of plaintiff's performance] is a distraction, because the question is not whether the employer's reasons for a decision are right but whether the employer's description of its reasons is honest."). Moreover, even if one were to just look at the qualifications of the applicants, the disparity in qualifications must be "overwhelming" to be evidence of pretext. *Sanchez,* 992 F.2d at 247.

General Mills had to make its decision regarding Mr. Calderwood's qualifications based on the limited information he provided. Mr. Calderwood provides no evidence to show that General Mills reliance upon this information was dishonest. It was only after Mr. Calderwood was removed from consideration that General Mills refused to consider his additional skills and experience as evidenced by his resume. In addition, the screening committee had to evaluate approximately 1,098 applications, and any disparities in the qualifications of the applicants that Mr. Calderwood attempts to point out are far short of overwhelming. The screening committee attempted to standardize the selections process by using a grading sheet with outlined criteria. Even if this method resulted in some incorrect results, there is no indication that General Mills failed to act in good faith when considering the applications. Ultimately, General Mills used legitimate, nondiscriminatory criteria in the evaluation of both Mr. Calderwood and other applicants, and Mr. Calderwood's personal opinion about his qualifications or those of others is irrelevant.

### 2. Inconsistencies in the Selections Process

Mr. Calderwood also attempts to show pretext by pointing out inconsistencies in the selections process. Specifically, he points to evidence that the Defendants refused to reconsider his application, when compared to employee referral applicants who did not have to go through the initial

9

application process.  In response, the Defendants contend that their refusal to reconsider the application was permitted because it was a business judgment, and the preference of employee referral applicants was a customary practice within the company.

"The ADEA is not a vehicle for reviewing the propriety of business decisions." *Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1426-27 (10th Cir. 1993).  "[A] challenged practice or policy need not be 'essential' or 'indispensable' to the employer's business for it to pass muster...[since the] touchstone of this inquiry is a reasoned review of the employer's justification for [its] use of the challenged practice." *Id.* at 1429 (internal citations omitted).

Failure to reconsider Mr. Calderwood's application, standing alone, is insufficient evidence to establish pretext.  The practice of not reconsidering an application does not unfairly impact the protected class.  Mr. Calderwood has made no showing that General Mills made a practice of only reconsidering the applications of younger employees, nor has he shown the decision was grounded in a discriminatory animus.

The practice of preferring employee referral applicants also does not unfairly impact individuals over 40 years old.  A current employee of General Mills may refer both young and old individuals, and preferential treatment for referral applicants is a business decision that is not prohibited under either the ADEA or the New Mexico Human Rights Act.  Consequently, Mr. Calderwood has failed to establish pretext through inconsistencies in the selections process.

### 3. A Visual Count of Individuals Over 40 Year Old

"[S]tatistical data showing an employer's pattern of conduct toward a protected class can create an inference that an employer discriminated against individual members of the class." *Fallis*, 944 F.2d at 746.  Statistics must show a "significant disparity and eliminate nondiscriminatory

explanations for the disparity" by showing discrimination between comparable individuals. *Id.* at 747.

Mr. Calderwood provides rough numerical estimates of what he believes to be evidence of discrimination. While these numbers fall short of any statistical reliability, this case is brought by a pro se plaintiff, so the Court will at least consider this evidence.

When General Mills conducted the testing portion of its selections process, Mr. Calderwood visited the testing site. Based upon a visual inspection of more than two hundred people tested, Mr. Calderwood believed that only twenty-eight (28) individuals appeared to be over forty (40) years old. However, the problem with Mr. Calderwood's observations is his failure to assess comparable individuals. The relevant inquiry should focus on the total number of individuals over 40 years old that applied for the opening, and the percentage of these individuals selected for the testing phase of the selections process.

For instance, it is possible that only 29 individuals out of the 1,098 total applicants were over 40 years old. Assuming this number is correct, Mr. Calderwood would be the only individual in the protected class to be disqualified during the first phase of the selections process. Certainly, this type of statistical comparison would not suggest discriminatory treatment. Alternatively, if 1,000 individuals out of the 1,098 total applicants were over 40 years old, and only 28 were selected for the testing phase, the evidence would tend to suggest discriminatory treatment.

However, such evidence is unavailable. There is no way to show an applicant's age from the preliminary application. Only two dates were requested: (1) dates attended for college and vocational school, and (2) dates employed under the current employer section. Neither of these inquiries directly solicited information about an applicant's age. Therefore, the numbers relied on by

Mr. Calderwood do not permit an inference of age discrimination, and the Court finds that Mr. Calderwood has failed to show that the explanation offered by General Mills is a pretext for intentional discrimination.

### IV.     Conclusion

For the above reasons, the Defendants' Motion for Summary Judgment is well taken and will be granted. The Plaintiff has failed to show that there is a genuine dispute of material fact as to whether the Defendants' proffered reasons for the challenged action are pretextual. Therefore, the Plaintiff's age discrimination claims brought against the Defendants will be dismissed with prejudice.

According to Rule 4(m) of the Federal Rules of Civil Procedure, since the Plaintiff failed to serve Defendant Holland Brown within 120 days after filing his complaint, the Court will dismiss the action without prejudice as to Holland Brown.

Wherefore,

IT IS SO ORDERED that Defendants General Mills and Kevin Robideau's Motion for Summary Judgment, filed June 19, 2000 *(Doc. 37)* is granted, and the Plaintiff's age discrimination claims based on the ADEA and the New Mexico Human Rights Act against General Mills and Kevin Robideau are hereby dismissed with prejudice.

IT IS FURTHER ORDERED that Plaintiff's age discrimination claims based on the ADEA and the New Mexico Human Rights Act against Holland Brown are hereby dismissed without prejudice.

DATED November 16, 2000.

_____
UNITED STATES DISTRICT JUDGE

Richard Eugene Calderwood,

    Plaintiff, pro se.

Attorney for Defendants:

    Agnes F. Padilla, Esq.
    Butt, Thornton & Baehr
    P.O. Box 3170
    Albuquerque, NM  87190
    (505) 884-0777